1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11         SAN JOSE DIVISION

12  NANOEXA CORP.,                          )   Case No.: 10-CV-2631-LHK
                                            )
13                      Plaintiff,          )   ORDER DENYING PLAINTIFF'S
          v.                                )   MOTION FOR A PRELIMINARY
14                                          )   INJUNCTION
                                            )
15  THE UNIVERSITY OF CHICAGO and           )   (re: docket #15)
    UCHICAGO ARGONNE, LLC,                  )
16                                          )
                        Defendants.         )
17  _____)

18

19        Plaintiff Nanoexa Corporation ("Plaintiff" or "Nanoexa") alleges that Defendants

20  University of Chicago and UChicago Argonne LLC ("Defendants") are impermissibly restricting

21  the scope of a patent license agreement between the parties.  Plaintiff claims that the licensing

22  agreement authorizes the production and sale of lithium-metal-oxide electrode material (a

23  component of lithium ion batteries), while Defendants contend that the license agreement only

24  authorizes the production and sale of lithium ion *batteries*.  Plaintiff seeks a preliminary injunction

25  declaring that it is licensed to make and sell the electrode material and preventing the Defendants

26  from claiming otherwise.  For the reasons discussed below, the motion is DENIED.

27

28

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. BACKGROUND

Plaintiff is a Delaware corporation, with its principal place of business in Mountain View, California.  Pl.'s Compl. ¶ 1.  Defendant University of Chicago is an Illinois corporation, while Defendant UChicago Argone LLC is an Illinois limited liability corporation.  *Id.* at ¶¶ 2-3.  In early 2006, Plaintiff contacted personnel at the Argonne National Laboratory ("Lab") to express an interest in licensing certain technology developed at the Lab.  Defendant University of Chicago operates the Lab.  After a few months of negotiations, the parties executed a licensing agreement.  *See* Compl., Exh. A [dkt. #1-1] (hereinafter "Agreement").  As operator of the Lab, the University of Chicago executed the Agreement on May 31, 2006.  Nanoexa signed on to the Agreement the following day, June 1, 2006.

The Agreement granted Plaintiff the "nonexclusive right and license to make, have made, use, sell, and offer for sale Licensed Products and Licensed Services in the **Field of Use** in the Territory, with no right to sublicense."  Agreement, §3.2 (bolded for emphasis).  Section 2.1 of the Agreement provides that "'Field of Use' shall mean Lithium Ion Batteries."  The Agreement references two licensed patents: 1) Patent Number 6,677,082 titled "Lithium-Metal-Oxide Electrodes for Lithium Cells and Batteries;" and 2) Patent Number 6,680,143 titled "Lithium-Metal-Oxide Electrodes for Lithium Cells and Batteries."  Agreement, Exh. A.  Section 15 provides that "[t]he Parties agree that Licensor, at its sole discretion, may immediately terminate this Agreement upon any attempt by the Licensee to transfer its interest, in whole or in part, in this Agreement to any other party without written permission of the Licensor."

On July 14, 2006, the University of Chicago and Nanoexa signed an amendment to the Agreement.  *See* Hagedorn Decl., Exh. D, Amend. No. 1 to Patent Option and License Agreement [dkt. #46-6] (hereinafter "Amendment").  In the Amendment, the University of Chicago agreed to

1  Nanoexa's request to extend rights in the Agreement to Decktron, Co. Ltd., a publicly held

2  company in Korea, to further the development and commercialization of battery technology.  *Id.*

3        In June 2009, Nanoexa entered into a Memorandum of Understanding ("MOU") with LICO

4  Technology Corp. ("LICO"), a company located in Taiwan.  Compl. ¶ 47.  According to

5  allegations in Nanoexa's Complaint, Nanoexa and LICO created a joint venture company,

6  Enerquest Corporation ("Enerquest") to manufacture and sell electrode material worldwide

7  pursuant to Nanoexa's rights under the Agreement.  *Id*. ¶¶ 47-48.

8        In February 2010, potential customers informed Nanoexa that it was not licensed to produce

9  or sell electrode material.  Compl. ¶ 38.  In March 2010, Nanoexa contacted the Lab to discuss the

10  scope of rights conferred in the Agreement.  Compl ¶ 39; Def.'s Opp. to Pl.'s Mot. for Prelim. Inj.

11  4 [dkt. #46].  Representatives of the Lab informed Nanoexa that the Agreement only conferred the

12  rights to make and sell lithium ion batteries, not the right to make for sale just the raw electrode

13  material.  Compl. ¶¶ 40-44.

14        Further discussions and correspondence in March and April 2010 proved unsuccessful.

15  Nanoexa filed its Complaint on June 15, 2010 making two claims.  First, it sought a declaratory

16  judgment against all Defendants declaring that it was entitled to make and sell electrode material to

17  third parties in the field of lithium ion batteries.  Compl. ¶¶ 64-66.  Second, Nanoexa claimed

18  breach of contract in that Defendants did not comply with the "duty of good faith and fair dealing"

19  by asserting that it was not entitled to make and sell electrode material to third parties.  *Id*. ¶¶ 67-

20  72.  On its second claim, Nanoexa alleged general damages of $660,000 and incidental and

21  consequential damages in excess of $10,000,000.  *Id*. ¶¶ 75-76.

22        On July 12, 2010, Nanoexa filed a motion for preliminary injunction, seeking relief on the

23  two claims identified in its Complaint.  The parties, by joint stipulation, agreed to an expedited

24  briefing schedule.  Before filing an Opposition, Defendants filed a Motion to Dismiss, or

3

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION

Alternatively to Transfer Venue.  The Court has set a hearing on that Motion for October 21, 2010.

Defendants filed an Opposition to Plaintiff's Motion for a Preliminary Injunction on August 13,

2010.  Pursuant to joint stipulation, Plaintiff waived its right to file a Reply.  The Court heard

argument on the Motion for Preliminary Injunction on August 26, 2010.

## II. LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

*Natural Res. Def. Council, Inc*., 129 S.Ct. 365, 374 (2008).  The issuance of a preliminary

injunction is at the discretion of the district court.  *Indep. Living Ctr. v. Maxwell-Jolly*, 572 F.3d

644, 651 (9th Cir. 2009).  The party seeking the injunction bears the burden of proving these

elements.  *Klein v. City of San Clemente*, 584 F. 3d 1196, 1201 (9th Cir. 2009).

## III. DISCUSSION

The heart of this dispute centers on interpretation of the patent licensing agreement,

attached as Exhibit A to Plaintiff's Complaint.  *See* Pl.'s Compl., Exh. A [dkt. #1-1].  However,

Defendants raise an objection as to the Court's capacity to issue effective relief given that,

according to Defendants, the Agreement was terminated on August 2, 2010.

A. *Whether the Motion for Preliminary Injunction is Moot?*

The basic question in determining mootness is whether there is a present controversy as to

which effective relief can be granted.  *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th

Cir. 1988).  "However, '[t]he burden of demonstrating mootness is a heavy one.'"  *Feldman v.*

*Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (citing *Gordon*).  Defendants argue that Nanoexa's

motion for preliminary injunction is moot because Defendants terminated the Agreement on

August 2, 2010 in response to allegations in Nanoexa's Complaint concerning the formation of a

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

joint venture, Enerquest, between Nanoexa and LICO.  Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. 4 [dkt. #46] (hereinafter "Defs.' Opp'n"); *see also* Hagedorn Decl. Exh. F [dkt. #46-8].  Defendants argue that Section 15 of the Agreement prohibits Nanoexa from transferring its interest in the Agreement without the written permission of the Licensor.  According to Defendants, Nanoexa never sought nor received permission to transfer rights to Enerquest or LICO.  Thus, Defendants argue, Nanoexa has no rights or interest in the Agreement, let alone the right to sell electrode material.  Defs.' Opp'n 6.

At the August 26, 2010 hearing before the Court, Plaintiff argued that Defendants have not shown that the Agreement was breached, and thus the case is not moot.  According to Plaintiff's statement in the parties' August 18, 2010 Joint Case Management Statement, "there has been no transfer or attempt to transfer rights in the License Agreement," rather the joint venture is authorized pursuant to the "have made" clause in Section 3.2 of the Agreement.  Jt. Case Mmgt. Conf. Stmt. 3 [dkt. #47].

Defendants have not met their heavy burden to show that Plaintiff's request for preliminary injunctive relief is moot.  Section 3.2 of the Agreement provides for "have made" rights, which allow Nanoexa to partner with other companies under the Agreement.  On this record, Defendants have not clearly proven that Nanoexa's creation of the joint venture Enerquest with LICO constitutes an attempt to "transfer its interest, in whole or in part" to another party in violation of Section 15 of the Agreement.

### B. Whether the Motion for Preliminary Injunction is Granted?

#### 1.  Likelihood of Success on Merits

In order to succeed on its request for a preliminary injunction, Nanoexa must make a clear showing that it is likely to succeed on the merits.  Because it has failed to do so, the Court must deny the motion for preliminary injunction.

United States District Court
For the Northern District of California

Both of Nanoexa's claims (declaratory relief and breach of contract) rest on the premise that the Agreement grants it the right to make and sell electrode material. Section 3.2 of the Agreement provides Nanoexa "a nonexclusive right and license to make, have made, use, sell, and offer for sale Licensed Products and Licensed Services in the Field of Use in the Territory, with no right to sublicense." Agreement, §3.2. According to Nanoexa, a "plain reading" of this section and the definitions in Section 2 of the Agreement grant it the right to make and sell electrode material, not just the finished lithium-ion batteries, to third parties.

The parties agree that Illinois law controls the central issue of contract interpretation. Under Illinois law, contracts are interpreted under the "four corners" rule, unless the contract is ambiguous. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Nanoexa and Defendants disagree as to whether manufacture and sale of electrode material to third parties is within the "Field of Use." Section 2 defines "Field of Use" as Lithium Ion Batteries. Agreement, §2.1. Essentially, Nanoexa's argument is that the greater power (the right to make and sell lithium ion batteries) includes the lesser power (the right to make and sell the electrode material that is a component of lithium ion batteries).

Unsurprisingly, Defendants disagree. On Defendants' "plain reading," Section 3.2 of the Agreement expressly limits Nanoexa to the manufacture and sale of "lithium ion batteries," not the constituent components. Furthermore, Defendants point to Section 1.2 of the Agreement which states that "Nanoexa is engaged in the business of high technology battery manufacturing and development," not electrode material manufacturing. Agreement, §1.2. And, Defendants continue, if the Agreement is ambiguous, parol evidence establishes that Nanoexa represented itself as in the business of "battery manufacturing." *See* Defs.' Opp'n 10 (identifying a pre-Agreement Commercialization Plan Worksheet and press releases as stating that Nanoexa was in the business of battery manufacturing).

After reviewing the evidence presented, the Court finds that Nanoexa has failed to carry its burden of showing that the Agreement unambiguously grants it the right to manufacture and sell electrode material. The Court agrees with Defendants that a plain reading of Section 3.2's Field of

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION

Use clause limits Nanoexa's rights to the manufacture and sale of lithium ion batteries, not the manufacture and sale of electrode material to third parties.  Even if the Agreement is ambiguous, Defendants have provided substantial extrinsic evidence supporting their interpretation that the Agreement grants rights to make and sell lithium ion batteries, not to make and sell electrode material to third parties.  For example, Defendants point to a "Commercialization Plan Worksheet" that identifies Nanoexa's products as batteries and identifies competitive products as batteries.  *See* Defs.' Opp'n 10.  At the August 26, 2010 hearing, Plaintiffs pointed to no extrinsic evidence, remaining steadfast to the position that the contract unambiguously supports its interpretation.  Thus, Defendants' arguments and declarations have successfully disputed Nanoexa's interpretation.  *See Credit Bureau Connection, Inc. v. Pardini*, 2010 U.S. Dist. LEXIS 78345 (E.D. Cal. July 12, 2010) (finding that plaintiff failed to carry its burden of showing likelihood of success when facts were equally in dispute by competing declarations).

      2.   Irreparable Harm

      In order to obtain a preliminary injunction, Nanoexa must also establish that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief.  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021-23 (9th Cir. 2009).  Monetary damages, no matter how substantial, are generally not considered irreparable harm as adequate compensatory relief will be available at a later date.  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1097, 1202 (9th Cir. 1980).  However, intangible injuries such as damage to reputation, advertising efforts, or goodwill may constitute irreparable harm.  *Rent-A-Center, Inc. v. Canyon Television & Appliance, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  Nanoexa has also failed to carry its burden of proving irreparable harm.

      Nanoexa, through declaration of its Chief Executive Officer Michael Pak, alleges that sales projections for electrode material are now in dispute.  *See* Compl. ¶ 59; Pak Decl. ¶¶ 30-32.  But as Nanoexa points out in its Motion for Preliminary Injunction, monetary harm alone is insufficient to support the issuance of a preliminary injunction.  *See* Pl.'s Mot. for Prelim. Inj. 18.

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

Nanoexa also alleges injury in relation to loss of market share and future investments, which "put its very survival at risk." *Id.* at 20.  But as Defendants respond, Nanoexa's conclusory and speculative allegations are insufficient to prove irreparable harm.  *See, e.g., Dotster, Inc. v. Internet Corp.*, 296 F. Supp. 2d 1159, 1165 (citing *American Passage Media Corp. v. Cass Comms., Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985)).  Finally, Nanoexas alleges that converting into a battery manufacturer will cost millions of dollars and substantial time.  But, as both Nanoexa and Defendants acknowledge, the Agreement granted Nanoexa "have made" rights in terms of manufacture of lithium ion batteries.  In 2006, Nanoexa partnered with a Korean company, Decktron, to manufacture and develop lithium ion batteries.  Thus, Nanoexa's allegations that it will have to "convert into a battery manufacturer" ring hollow.

In sum, Nanoexa has not met its burden of proving irreparable harm.

3.   Balance of Equities

As with the first preliminary injunction factor, likelihood of success on merits, the third and fourth factors do not tip clearly in Plaintiff's favor.  In regard to the balance of equities, Nanoexa alleges that preliminary injunctive relief will "preserve the status quo" until the merits can be sorted out.  Pl.'s Mot. for Prelim. Inj. 20-21.  But Defendants make a strong case that preserving the status quo means limiting Nanoexa's use of the patented technology to the manufacture and sale of lithium ion batteries, until the dispute over the manufacture and sale of electrode material is resolved.  *See Tanner Motory Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (citation omitted) ("The status quo is the last uncontested status which preceded the pending controversy.").

4. Public Interest

Similarly, the public interest is a neutral factor in the analysis.  Nanoexa, somewhat curiously, points to the strong public policy interest in protection and enforcement of patent rights.  Pl.'s Mot. for Prelim. Inj. 21.  However, Defendants hold the patent rights here, with Nanoexa having rights to the patented technology pursuant to the Agreement.  Nanoexa also points to the development of lithium ion battery technology for the "benefit of the U.S. economy and the general public." *Id.* at 22.  But these impacts are too speculative and not supported by relevant evidence.

8

*See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (public interest consequences of injunction "must not be too remote, insubstantial, or speculative and must be supported by evidence.") (citation omitted).

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for a Preliminary Injunction is DENIED.

**IT IS SO ORDERED.**

Dated: August 27, 2010

_____
LUCY H. KOH
United States District Judge

Case No.: 10-CV-2631-LHK
ORDER DENYING PRELIMINARY INJUNCTION