UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANOEXA CORP., <br><br>  Plaintiff, <br> v. <br><br> THE UNIVERSITY OF CHICAGO and UCHICAGO ARGONNE, LLC, <br><br>  Defendants. | Case No.: 10-CV-2631-LHK <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE <br><br> (re: docket #58) |

Plaintiff Nanoexa Corporation ("Plaintiff" or "Nanoexa") alleges that Defendants University of Chicago and UChicago Argonne LLC ("Defendants") are in breach of contract and liable for patent misuse by impermissibly restricting the scope of a patent license agreement between the parties. On August 27, 2010, this Court denied Plaintiff's motion for preliminary injunction for failure to establish likelihood of success on the merits and failure to show irreparable harm. *See* August 27, 2010 Order at 6-7 [dkt. #5] (agreeing with Defendants that plain reading of license agreement grants Plaintiff right to manufacture and sell lithium ion batteries, and not manufacture and sell component electrode material to third parties). Defendants have now moved to dismiss for lack of personal jurisdiction, failure to state a claim, failure to join required parties, and improper venue. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate

1

Case No.: 10-CV-2631-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

for resolution without oral argument. For the reasons discussed below, the Court agrees that it lacks personal jurisdiction over Defendants and GRANTS WITH PREJUDICE Defendants' motion to dismiss on that ground.

## I. BACKGROUND

### A. Factual Background

The Court's August 27, 2010 Order discussed the factual background in detail. Here, the Court assumes familiarity with that background and will only highlight allegations relevant to the personal jurisdiction analysis. Plaintiff filed its Complaint on June 15, 2010, and a First Amended Complaint on August 27, 2010. Plaintiff Nanoexa has been incorporated as a Delaware corporation since 2005, with its principal place of business in Mountain View, California. Pl.'s First Am. Compl. ("FAC") ¶ 1. Defendant University of Chicago is an Illinois corporation, and has designated an agent for service of process in Illinois. *Id*. at ¶ 2-3. The University of Chicago is also registered to do business in California, and has designated an agent for service of process in California. *Id*. at ¶ 4. Defendant UChicago Argonne LLC ("Argonne") is an Illinois limited liability corporation and has been the operator of the Argonne National Laboratory since October 2006. *Id*. at ¶¶ 5-6, 42. Argonne has designated an agent for service of process in Chicago, Illinois. *Id*. at ¶ 6.

On January 19, 2006, a representative of Nanoexa, Dr. Sujeet Kumar, contacted by phone officials at the Argonne National Laboratory to express an interest in licensing certain technology (e.g., two patents) developed by the Lab. *Id*. at ¶ 12. Dr. Kumar, who was in California at the time, followed up his call with an e-mail dated January 19, 2006. *Id*. at ¶ 14. Over the ensuing weeks, representatives of Nanoexa and the Lab engaged in conference calls to discuss a "business relationship," and eventually agreed on a meeting in Chicago at the Lab held on April 6, 2006. *Id*. at ¶¶ 16-18. Dr. Kumar and other Nanoexa officials communicated to Lab officials that they would fly from San Francisco to Chicago for the meeting. *Id.* At the meeting, Nanoexa gave a PowerPoint presentation, describing Nanoexa as a company "focused on accelerating the

commercialization of new portable energy products that are nanotechnology enabled." *Id.* at ¶ 19. The April 2006 meeting resulted in further discussions to license the two patents.

On April 14, 2006, a technology director at the Lab e-mailed Nanoexa representatives sample agreements, including a "standard Technical Service Agreement" and a "Commercialization Plan Worksheet." *Id.* at ¶ 20. Nanoexa completed the Commercialization Plan Worksheet, indicating that it was located in Mountain View, California. *Id.* at ¶ 21. Further negotiations resulted in a "Patent Option and License Agreement" ("License Agreement"). *Id.* at ¶ 22. On May 31, 2006, a University official signed the License Agreement, and on June 1, 2006, Nanoexa Chief Executive Officer Michael Pak signed the License Agreement for Nanoexa. *Id.* at ¶¶ 22-24.[1] The License Agreement provides Nanoexa non-exclusive rights to two of the Lab's patents related to lithium cells and batteries, and allows Nanoexa to "make, have made, use, sell, and offer for sale Licensed Products and Licensed Services in the Field of Use in the Territory, with no right to sublicense." *See* License Agreement, §3.2. The License Agreement provides that Nanoexa will pay licensing fees and royalties on the sale of Licensed Products and Licensed Services. *Id.*, Exh. C "License Fees and Royalties." Nanoexa alleges that it made an initial fee payment in July 2006, and is current on its payment obligations. FAC at ¶ 41.

**B. Procedural Background**

Plaintiff filed its Complaint on June 15, 2010, and then filed a motion for preliminary injunction on July 12, 2010. Defendants' filed a motion to dismiss (including for lack of personal jurisdiction) on August 6, 2010, and then filed an opposition to Plaintiff's motion for preliminary injunction one week later (which did not challenge personal jurisdiction for purposes of ruling on the preliminary injunction motion), on August 13, 2010.[2] On August 27, 2010, one day after the Court's hearing on the motion for preliminary injunction, Plaintiff filed the operative FAC.

---

[1] The License Agreement was attached as Exhibit A to Plaintiff's original Complaint, but is not attached to Plaintiff's FAC. Nonetheless, the License Agreement has already been produced, is specifically referenced in Plaintiff's FAC, and will thus be incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

[2] Although the issue is not raised by Plaintiff, Defendants have not waived their right to challenge personal jurisdiction solely by opposing Plaintiff's motion for preliminary injunction. Under Ninth

3
Case No.: 10-CV-2631-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

## II. DISCUSSION

Federal Circuit law governs personal jurisdiction in a patent declaratory judgment action for non-infringement. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). However, for claims that are not "intimately involved with the substance of the patent laws," regional circuit law governs personal jurisdiction. *See Elecs. for Imaging v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Under both Federal Circuit and Ninth Circuit law, personal jurisdiction over an out-of-state defendant requires a showing that: 1) the defendant is amenable to service of process, determined through examination of the state's long-arm statute; and 2) the exercise of jurisdiction must "comport with due process," based on whether the defendant established minimum contacts in the forum state. *See Patent Rights Protection Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1368-69 (Fed. Cir. 2010); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). "However, because California's long arm-statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). It is plaintiff's burden to establish personal jurisdiction, and the court accepts plaintiff's "uncontroverted allegations" as true. *See Avocent Huntsville Corp. v. Aten In'l Co., Ltd.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2008); *Schwarzenegger*, 374 F.3d at 800. ). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). If amendment would be futile, a dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

There are two types of personal jurisdiction: general and specific. For general personal jurisdiction, "the defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Avocent*, 552 F.3d at 1330;

---

Circuit law, a motion to dismiss for lack of personal jurisdiction is sufficient to avoid waiver when the motion is raised in a timely manner. *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998). Defendants' motion to dismiss for lack of personal jurisdiction was raised in their first motion with the Court; in fact, Defendants raised personal jurisdiction even before opposing Plaintiff's motion for preliminary injunction. Accordingly, Defendants have not waived their right to challenge personal jurisdiction.

*Schwarzenegger*, 374 F.3d at 801.  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

The second type of personal jurisdiction is specific jurisdiction.  The Ninth Circuit has a three-part test, requiring the plaintiff to show that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Schwarzenegger*, 374 F.3d at 802.  It is the plaintiff's burden to plead allegations satisfying the first two prongs, and if plaintiff does so, the burden shifts to the defendant to show why exercise of personal jurisdiction is not reasonable and fair.  *Schwarzenegger*, 374 F.3d at 802.

Nanoexa's only allegations as to personal jurisdiction relate to its breach of contract claims, which are not "intimately involved with the substance of the patent laws."  Accordingly, Ninth Circuit law is controlling as to personal jurisdiction.  *See Coyle*, 340 F.3d at 1349 (Fed. Cir. 2003).

**A. General Jurisdiction**

**1. Defendant University of Chicago**

Nanoexa alleges that the University of Chicago is subject to general jurisdiction because it is licensed to do business in California and has designated an agent for service of process in California.  The Court finds that Nanoexa's allegations are insufficient to establish general jurisdiction over the University of Chicago.

As a preliminary matter, courts are "understandably reluctant to exercise general jurisdiction." *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171-74 (9th Cir. 2006).  Licensing and designation of an agent for service may be relevant factors in the analysis of general personal jurisdiction, but the Court must look at the "economic reality" of Defendants' activities rather than a "mechanical checklist." *Id*. at 1172.  Here, the allegations that the University of Chicago is licensed to do business in California and has designated an agent for service of process in California are insufficient to establish general jurisdiction because the contacts do not approximate physical presence in California.  Numerous Ninth Circuit cases have rejected

arguments for general jurisdiction even on more substantial contacts with the forum state. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 801 (rejecting argument for general jurisdiction in California where non-resident defendant's contacts included sales contracts with California residents, utilization of a California marketing company, and hiring a California company for consulting services); *Bankcroft & Masters v. Augusta National*, 223 F.3d 1082, 1086 (9th Cir. 2000) (rejecting argument for general jurisdiction even when defendant made occasional sales to California residents because "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite defendants' significant contacts with forum, including sales contracts that included a choice of law favoring the forum, a sales force in the forum, and several visits and pre-contract negotiations in forum).

Moreover, California courts have also declined general jurisdiction based merely on an entity's registration do to business in California and appointment of a California agent for service of process. *See, e.g.*, *DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080, 1095 (2002) (finding no personal jurisdiction even though defendant registered to do business in California, maintained a California agent for service of process, and had two officers residing California); *Gray Line Tours v. Reynolds Elect. Engineering & Co.*, 193 Cal. App. 3d 190, 193-95 (1987) (holding that designation of an agent for service of process and qualification to do business in California alone do not constitute grounds for general jurisdiction).

Though not alleged in its FAC and, thus, not technically before the Court, Plaintiff's Opposition to the Motion to Dismiss includes a press release describing the University of Chicago's authority to issue gift annuities to California residents and a news article describing the University of Chicago's research affiliation with the University of California, Santa Cruz's Center for Adaptive Optics. Even if Plaintiff had properly submitted these allegations before the Court, general jurisdiction would still be lacking because it is not clear that these are the type of "substantial" or "continuous and systematic" contacts necessary to support general jurisdiction.

*See, e.g.*, *Duchesneau v. Cornell Univ.*, 2009 U.S. Dist. LEXIS 19125, *14-20 (E.D. Pa. Feb. 26, 2009) (rejecting argument for general jurisdiction over Cornell University in Pennsylvania when the contacts alleged (such as recruiting, alumni activities, and participation in athletic events in Pennsylvania) were those in which "any nationally prominent university would engage" and would allow for general jurisdiction in essentially all states). In any event, Plaintiff's allegations do not satisfy the "exacting standard" necessary for a finding of general jurisdiction.

### 2. Defendant Argonne

Nanoexa does not allege that Argonne is subject to general jurisdiction in California. *See* FAC; *see also* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2-5 (arguing for general jurisdiction only as to Defendant University of Chicago). Accordingly, the Court finds general jurisdiction lacking as to both Defendants.

### B. Specific Jurisdiction

#### 1. Defendant Argonne

Nanoexa alleges that Defendant Argonne, as operator of the Lab and the Lab's licensing agreements, is subject to specific jurisdiction in California based on contract negotiations that took place in California and Illinois and based on Nanoexa's signing of the License Agreement in California. The Court finds that Nanoexa has failed to satisfy the first prong of the specific jurisdiction analysis, as its allegations do not support a finding that Argonne purposefully directed its activities at California residents.

On its own allegations, Nanoexa: 1) initiated contact and licensing discussions with officials at the Argonne Lab, FAC ¶ 12; 2) followed up its initial contact with e-mails and further phone calls, *Id*. at ¶¶ 14-16; 3) flew to Chicago to present its corporate strategy in its efforts to seek a license to the Lab's technology, *Id*. at ¶¶ 17-19; 4) agreed to a non-exclusive license for the technology, *Id*. at ¶ 28; and 5) agreed to an Illinois choice of law provision, License Agreement, §19.3. This is a far cry from purposeful availment toward California residents by Argonne. The License Agreement, which is non-exclusive,[3] is insufficient on its own to create personal

---

[3] Though not controlling as to Nanoexa's breach of contract claims, the Federal Circuit views exclusive licenses as a factor in favor of finding purposeful availment. *Autogenomics*, 566 F.3d at

7

Case No.: 10-CV-2631-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 ("formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction.") (citing *Burger King Corp. v. Rudzwwicz*, 471 U.S. 462, 478 (1985)).  Argonne received no benefit, privilege, or protection from California, as the parties agreed to an Illinois choice of law provision in the License Agreement.  *See Schwarzenegger*, 374 F.3d at 802 (rejecting argument for specific jurisdiction where defendant's activities were not "expressly aimed" at forum).  Instead of Argonne directing its technology and activities at California residents, Plaintiff's own allegations paint a vivid picture of Plaintiff's efforts in seeking out Argonne in Chicago.

Plaintiff's Opposition makes much of the allegations that pre-contract negotiations occurred in both California and Illinois.  However, "ordinarily, 'use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.").  *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991).  This proposition is especially appropriate where, as here, Plaintiff is the party that actively sought out and communicated its intent to do business with Argonne.  *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997) (purposeful availment requires a showing that the defendant, not the plaintiff, took deliberate action in the forum state).  Allegations that Defendants returned Plaintiff's phone calls or responded to Plaintiff's e-mails do not show purposeful availment on the part of Defendants.  Simply put, Plaintiff has not alleged that the contacts between the parties were "attributable to [Defendants'] own actions," rather than actions initiating and continuing contacts on the part of Plaintiff.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).

### 2. Defendant University of Chicago

Nanoexa makes no allegations that the University of Chicago is subject to specific jurisdiction.  *See* FAC; *see also* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5-7 (arguing for specific

---

1021.  As acknowledged by Plaintiff, however, the License Agreement is non-exclusive and thus would not favor a finding that Defondant Argonne purposefully availed itself of the privileges of conducting business in California even under Federal Circuit law.

jurisdiction only as to Defendant Argonne).  Accordingly, the Court finds specific jurisdiction lacking as to both Defendants.

### C. Dismissal with Prejudice

Defendants filed their motion to dismiss based on, in part, personal jurisdiction on August 6, 2010.  Plaintiff's FAC was not filed until August 27, 2010, a full three weeks after Defendants' motion to dismiss.  Plaintiff's FAC, however, did not provide any additional allegations supporting personal jurisdiction besides those discussed above.  Plaintiff had an additional opportunity to argue for personal jurisdiction in its Opposition to Defendants' Motion to Dismiss (filed on September 24, 2010), but the additional information provided was insufficient to establish personal jurisdiction.  Accordingly, the Court finds that further leave to amend would be futile and thus dismisses the case with prejudice.  *See Dumas*, 90 F.3d at 393.

### III. CONCLUSION

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED WITH PREJUDICE.  The Motion Hearing and Case Management Conference scheduled for October 21, 2010 are both VACATED.

**IT IS SO ORDERED.**

Dated: October 20, 2010

*Lucy H. Koh*
LUCY H. KOH
United States District Judge